## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

CARL GREEN                                    :
309 W. Johnstown Road                         :
Gahanna, Ohio, 43230                          :
                                              :
            Plaintiff, on behalf              :
            of himself and others             :
            similarly situated,               :
                                              :
v.                                            :        CASE NO. 2:25-cv-380
                                              :
OAKWOOD MANAGEMENT                            :
COMPANY                                       :
d/b/a Buckeye Utility Billing Services        :
c/o Timothy M. Kelley                         :
250 East Broad Street                         :
Columbus, Ohio, 43215                         :
                                              :
            Defendant.                        :

## CLASS ACTION COMPLAINT

Now comes CARL GREEN ("Plaintiff"), for himself and other similarly situated individuals, and sets forth below his CLASS COMPLAINT against OAKWOOD MANAGEMENT COMPANY, d/b/a Buckeye Utility Billing Service. ("Defendant").

<u>JURISDICTION AND VENUE</u>

1. This Court has subject matter jurisdiction over this matter because Plaintiff's case seeks to resolve a federal question within the meaning of 28 U.S.C. §1331, and specifically, whether Defendant violated provisions of the Fair Debt Collection Practices Act ("FDCPA") found at 15 U.S.C. §1692 et seq.

2. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all other claims stated in this CLASS ACTION because they are so related to the claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court maintains personal jurisdiction over Defendant based upon Defendant's (i) contacts within this federal district; (ii) presence within this federal district, and/or (iii) consent to personal jurisdiction within this federal district.

4. This Court is the proper venue for this action pursuant to 28 U.S. C. §1391(b)(2).

### FACTUAL ALLEGATIONS

5. On September 27, 2023, Plaintiff signed a Rental Agreement ("Lease") drafted by Defendant for the occupancy of residential real estate located at 3834 G Rocky Glen, Columbus, Ohio 43230 ("Property")

6. A true and authentic copy of the Lease is attached hereto as Exhibit A.

7. The term of the Lease was for approximately 15 months starting on November 1, 2023, and ending on January 31, 2025.

8. Pursuant to the Lease, each month, Plaintiff was to pay $1,488.00 in rent, plus an additional $100.00 for garage space, and $11.00 for something called "MLRP" - for a total monthly charge of $1,599.00.

9. Under the Lease all rent was due on the 1st day of each month.

10. The Lease generally requires Plaintiff to pay Defendant the monthly amounts due through something called the "Rent Café" portal.

11. The Rent Café portal is an internet site which accepts Automated Clearing House ("ACH") payments from the Plaintiff and transfers them to the Defendant.

12. The Lease appears to allow for money order and check payments but discourages it because payments made pursuant to these methods are subject to a $15.00 processing fee.

13. Plaintiff digitally signed the Lease using the Rent Café E-Signature service over the Internet.

14. Section IX of the Lease states that Defendant will not be responsible for paying for electricity, gas, water, sewage/storm water and trash disposal because none of the check-mark boxes in that clause were selected.

15. The Lease contains an attached "Utility Services Addendum".

16. The Utility Services Addendum recites that Plaintiff will be responsible for paying, among other things, the water and sewer bill.

17. The Utility Services Addendum also states that the water and sewer bill must be paid to an entity named Buckeye Utility Billing Services ("BUBS").

18. BUBS sends Defendant's tenants periodic invoices for utilities subject to late fees of $5.00 unless paid within 15 days.

19. The Utility Services Addendum also states that:

The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment.

20. This Utility Services Addendum also states that:

Lessee agrees to pay a ($10.00) ten-dollar one-time non- refundable set-up fee at the start of service and no more than ($6.00) six dollars per month as an administrative fee for any applicable services listed above.

21. Throughout most of his tenancy, Plaintiff's monthly water and sewer bill averaged approximately $50.00.

22. Plaintiff routinely received his water bill invoices in the month following the month of the water and sewer usage being billed.

23. On or about September 24, 2024, Defendant sent Plaintiff a work order notification stating that the water and sewer usage for the Property was higher than normal.

24. Defendant also put a work order notification on Plaintiff's door stating that maintenance worker(s) would be entering the Property to attempt to remedy the problem on September 26, 2024.

25. On or about September 25, 2024, Plaintiff received a water and sewer invoice ("WSI") from BUBS for water and sewer usage from August 2, 2024, to September 1, 2024.

26. A true and accurate copy of the WSI is attached hereto as Exhibit B.

27. BUBS asserted in the WSI that the amount due for such time-period was $566.65.

28. Specifically, BUBS sought $170.23 for "water" charges and another $376.24 for "sewer" charges.

29. Also, in the WSI was another charge of $15.18 for "Trash" and $5.00 more for an "*Admin Fee*."

30. The September 25, 2024, WSI from BUBS was substantively similar in form and appearance to every other WSI Plaintiff received from BUBS during his tenancy.

31. Following BUBS' issuance of the September 25, 2024, WSI, Defendant claimed that on September 26, 2024, its maintenance workers entered the rented premises and repaired a "tub stem" which was visibly leaking.

32. Plaintiff questioned the amount of such a high bill and was indicated his unwillingness to pay it because under Ohio Revised Code § 5321.04, landlords of residential property in Ohio are required to maintain plumbing fixtures in good working order.

33. The repair efforts of the Defendant on or about September 26, 2024, apparently did not solve the problem because Defendant sent Plaintiff a new work order notification indicating that on October 8, 2024, a maintenance worker named "Rogers" entered the rented premises and "adjusted" the "floater ball" "in the back of the toilet tank in the master bathroom.

34. Defendant next sent Plaintiff an email dated October 21, 2024, in response to Plaintiff's earlier questions about the WSI sent in September of 2024.

35. A true and accurate copy of that email is attached hereto as Exhibit C.

36. In Defendant's October 21, 2024, email, Angie Piek, a property manager for "Albany Glen Apartments" of the "Oakwood Management Company" told Plaintiff:

> Please note, Albany Glen is not the water company and <u>does not have an affiliation with the billing</u>. We onsite are simply the middlemen that [sic] provides basic support to the water company if needed… (emphasis added).

37. On November 18, 2024, Defendant sent another letter to Plaintiff demanding that Plaintiff remit $947.05 to BUBS.

38. A true and accurate copy of this letter is attached hereto as Exhibit D.

39. At all times relevant to this action, Plaintiff believed that BUBS was an entity, separate and distinct from Defendant, and which was affiliated with the local utility service companies who provided utilities to the Property.

40. Defendant's November 18, 2024, letter states that if this payment was not received by January 1, 2025, Plaintiff's rental payment "will be returned, and we will proceed with full eviction."

41. Based upon the aggressive nature of Defendant's communications, Plaintiff had no further intention of remaining a tenant in the Property.

42. Plaintiff vacated the Property on January 31, 2025.

43. Plaintiff paid Defendant (and BUBS) all lawful Lease charges, inclusive of rent.

44. Plaintiff paid Defendant (and BUBS) the so-called "one-time, non-refundable, $10.00 set up fee"

45. Plaintiff paid Defendant (and BUBS) at least $75.00 covering 15 monthly $5.00 charges for "administrative fees".

## CLASS ALLEGATIONS AND ATTRIBUTES

46. According to the records of the Ohio Secretary of State, Defendant was established as an Ohio corporation in 1970.

47. According to the records of the Ohio Secretary of State, Defendant filed papers establishing that BUBS is a registered trade name held and owned by Defendant.

48. As of 2025, Defendant claims to manage and operate over 12,000 residential multifamily units in Ohio.

49. Since April 9, 2019, thousands of Ohio tenants leasing Defendant's managed, residential, multifamily units have executed and abided by the same boilerplate form Lease and Utility Services Addendum.

50. Since April 9, 2019, thousands of Ohio tenants leasing Defendant's managed, residential multifamily units have paid Defendant (through BUBS) at least one (1) "one-time, non-refundable, $10.00 set up fee".

51. Since April 9, 2019, thousands of Ohio tenants leasing Defendant's managed, residential multifamily units have paid Defendant (through BUBS) at least one (1) monthly charge of $5.00 or more for "administrative fees".

52. Since April 9, 2024, Defendant (through BUBS) has sent thousands of Ohio tenants the same or similar form WSIs to collect, among other things, at least one (1) "one-time, non-refundable, $10.00 set up fee" and at least one (1) monthly charge of $5.00 or more for "administrative fees".

53. Plaintiff proposes to certify and represent at least three (3) classes of similarly situated individuals pursuant to Fed. R. Civ. P 23(b)(2) and (b)(3).

54. Class certification of such classes will economically and efficiently resolve on a class wide basis, all factual and legal issues involved in the following alleged CLASS COUNTS for relief against Defendant.

55. <u>CLASS ONE</u> - Each person who and/or whose:

    a. Is a signatory on at least one (1) Lease and Utility Services Addendum;

    b. Lease and Utility Services Addendum is in the form exemplified by the attached as EXHIBIT A;

    c. Received at least one WSI from Defendant (through BUBS) in the form exemplified by EXHIBIT B;

    d. On or after April 9, 2024;

56. <u>CLASS TWO</u> – Each person who and/or whose:

    a. Is a signatory on at least one (1) Lease and Utility Services Addendum;

    b. Lease and Utility Services Addendum is in the form exemplified by the attached as EXHIBIT A;

    c. Paid Defendant (and/or BUBS) at least one (1) "one-time, non-refundable, $10.00 set up fee";

    d. On or after April 9, 2019.

57. <u>CLASS THREE</u> – Each person who and/or whose:

    a. Is a signatory on at least one (1) Lease and Utility Services Addendum;

    b. Lease and Utility Services Addendum is in the form exemplified by the attached as EXHIBIT A;

    c. Paid Defendant (and/or BUBS) at least one (1) monthly charge of $5.00 or more for "administrative fees";

    d. On or after April 9, 2019.

## CLASS AND INDIVIDUAL COUNT I - FDCPA

58. All statements and allegations contained in all preceding paragraphs are incorporated into this COUNT as if fully rewritten

59. Plaintiff and other similarly situated tenants of Defendant's managed properties are "consumers" as that term is defined by 15 U.S.C. § 1692a(3) because they are natural persons obligated or allegedly obligated to pay any debt.

60. Defendant is a "creditor" as that term is defined by 15 U.S.C. § 1692a(4).

61. Defendant, through its separately used trade name, BUBS, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

    a. Upon information and belief, Defendant contracts with utility service providers including municipalities and cities to provide utility services for the residential real properties it manages.

    b. Upon further information and belief, such utility service providers charge Defendant for their provision of utilities and services.

    c. Upon further information and belief, Defendant utilizes the trade name BUBS, a name different than its own, to collect Defendant's obligations for utility services from Defendant's tenants.

    d. Defendant did not disclose to Plaintiff or any similarly situated tenant that BUBS is simply a trade name and that BUBS and Defendant are one and the same entity.

    e. Instead, Defendant purposely disassociates itself from BUBS and routinely and falsely claims that it does not have anything to do with BUBS, the provision of utility services, and/or the billing associated with the provision of utility services.

    f.   Defendant's use of the trade name BUBS indicates to Plaintiff and all similarly situated tenants that a third party is responsible for collecting such utility service charges.

62. Amounts sought by BUBS from Plaintiff and other similarly situated tenants of Defendant's managed properties are "debts" as that term is defined by 15 U.S.C. §1692(a)(5) because they are alleged obligations owed for primarily personal, family or household purposes.

63. The WSIs sent by Defendant (through BUBS) to Plaintiff and all other similarly situated tenants of Defendant's managed properties are "communications" within the meaning of 15 U.S.C. § 1692(a)(2) because such WSIs are a means a conveying of information regarding a debt directly or indirectly to any person through any medium.

64. Defendant's conduct in sending and usage of the WSI's (through BUBS) violate the FDCPA in multiple ways as to Plaintiff and all other similarly situated tenants of Defendant's managed properties, including but not limited to the following:

    a.   Defendant fails to comply with the debt validation and noticing provisions of 15 U.S.C. § 1692g(a);

    b.   Defendant falsely represents it may be legally paid $5.00 (or more) in monthly "administrative fees" for the act of collecting water and sewerage charges in violation of 15 U.S.C. § 1692f(2)(A) and (B);

    c.   Defendant's usage of the BUBS trade name for collection of water, sewer and other charges is generally a deceptive means of debt collection and violates 15 U.S.C. § 1692f(10); and

    d.   Defendant's WSIs fail to contain the language required by 15 U.S.C. § 1692f(11).

65. Pursuant to 15 U.S.C. § 1692k(a)(1), Plaintiff is entitled to recover his individual actual damages caused by Defendant's FDCPA violations.

66. Pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), Plaintiff, as a named plaintiff in an FDCPA class action, is entitled to recover up to $1,000.00 in individual additional damages as would be permitted under 15 U.S.C. § 1692k(a)(2)(A).

67. Pursuant to 15 U.S.C. § 1692k(a)(1), all putative class members are each entitled to recover actual damages caused by Defendant's FDCPA violations.

68. Pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii), all putative class members are collectively entitled to such amount as the court may allow without regard to a minimum individual recovery, not to exceed the lesser of $500,000.00 or 1 per centum of Defendant's net worth.

69. Pursuant to 15 U.S.C. § 1692k(a)(3), the Court may award court costs and reasonable attorneys to Plaintiff in both his individual and class representative capacity.

## CLASS AND INDIVIDUAL COUNT TWO – BREACH OF CONTRACT

70. All statements and allegations contained in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

71. The Leases and Utility Services Addendums signed by Plaintiff and each putative class member are contracts under Ohio law.

72. Defendant drafted the terms of the Leases and Utility Services Addendums and therein intentionally established a mechanism to charge its Plaintiff and its other tenants impermissible fees so that Plaintiff and such other tenants could pay for their water, sewer and other utility charges.

73. Plaintiff and each putative class member performed according to the terms of such Leases and Utility Services Addendums.

74. Plaintiff and each putative class member are "tenants" as that term is defined under Ohio Revised Code § 5321.01(A).

75. The Leases and Utility Services Addendums signed by Plaintiff and each putative class members are "rental agreements" as that term is defined under Ohio Revised Code § 5321.01(D).

76. At all times relevant to this Complaint, Defendant managed the Property, and all other properties in which each putative class member resided pursuant to the Leases and Utility Service Addendums.

77. Defendant is a "landlord" as that term is defined under Ohio Revised Code § 5321.01(B).

78. The Property resided at by Plaintiff and each other property resided at by each putative class member constitute "residential premises" as that term is defined under Ohio Revised Code § 5321.01(C).

79. Pursuant to Ohio Revised Code § 5321.04(A)(4), Defendant as a "landlord" must, among many other statutory obligations, supply its tenants with running water.

80. Pursuant to Ohio Revised Code § 5321.13(D), the Lease and Utility Services Addendum unlawfully include a provision or provisions that provide Defendant with exculpation or limitation of any liability arising under law or to indemnify the landlord for that liability or its related costs.

81. Defendant knew or should have known that charging Plaintiff and other similarly situated tenants fees for the act of collection of water, sewer and other charges would, at a minimum, violate Ohio public policy, and more specifically, the Ohio landlord / tenant statutes referred to herein.

82. Defendants knew or should have known that charging Plaintiff, and other similarly situated tenants, additional charges so Plaintiff and such other tenants could simply pay for their basic water and sewer charges was, at the very minimum, unfair and/or unconscionable.

83. When entering into contracts governed by Ohio law, Defendant owes its Ohio contract counterparts, among other things, a duty to act fairly and deal in good faith.

84. Plaintiff and each putative class member collectively were charged by, and/or collectively paid Defendants millions of dollars in "set up" fees and "administrative fees" so that Plaintiff and such similarly situated tenants could pay basic utility service charges from April 9, 2019, to the present.

85. Defendant breached its contractual duty of good faith and fair dealing to Plaintiff and each putative class member by charging for, collecting and/or retaining the so-called "set up" fees and monthly "administrative fees".

86. Plaintiff and each putative class member have each suffered administratively measurable losses in the amounts each individual paid Defendant for "set up" fees and monthly "administrative fees" pursuant to the Leases and Utility Services Addendums they signed.

87. The losses sustained by Plaintiff and each putative class member are the proximate and direct result of Defendant's breach of its covenant to act fairly and deal in good faith.

## CLASS AND INDIVIDUAL COUNT THREE – UNJUST ENRICHMENT / *QUANTUM MERUIT*

88. All statements and allegations contained in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

89. To the extent relief is not accorded to Plaintiff and each putative class member pursuant to CLASS COUNT TWO, Plaintiffs state alternatively that relief may be accorded to them and all putative class members hereunder.

90. Defendant was obligated to supply Plaintiff and each putative class member, among other things, running water and other utility services.

91. Plaintiff and each putative class member were equally obligated to pay for the actual usage of the water and other utility services.

92. Plaintiff and each putative class member were never legally obligated to pay Defendant's costs or other of Defendant's liabilities so that Defendant could comply with its own responsibilities under Ohio landlord/tenant law.

93. Plaintiff and each putative class member were charged for and/or paid "set up" fees and monthly "administrative fees" which conferred significant financial benefits upon Defendants.

94. Defendant had knowledge that it was receiving "set up" fees and monthly "administrative fees" so that Plaintiff and other similarly situated tenants could pay their basic periodic utility services charges.

95. Defendant has retained the herein described benefits in a manner which is unjust.

96. Defendant would be unjustly enriched if Defendant is permitted to retain the benefits of charging and/or collecting the "set up" fees and monthly "administrative fees" from April 9, 2019, to present.

**CLASS AND INDIVDUAL COUNT FOUR –
DISGORGEMENT PURSUANT TO Ohio Revised Code § 5321.14(A)**

97. All statements and allegations contained in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

98. Ohio Revised Code § 5321.14(A) states: If the court as a matter of law finds a rental agreement, or any clause thereof, to have been unconscionable at the time it was made, it may refuse to enforce the rental agreement or it may enforce the remainder of the rental agreement without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

99. The provision(s) of the Lease and Utility Services Addendum regarding payment to Defendant of "set up" fees and monthly "administrative fees" is inherently unconscionable because, *inter alia*, such provision(s) constitutes an attempted modification of the provisions of Ohio's Landlords and Tenants Act and represents an agreement which is prohibited by Ohio Revised Code § 5321.13 - in that it expects to partially limit Defendant's statutory liabilities (e.g. shift costs of supplying running water and other utility services to Plaintiffs and the putative class members).

100. The Court is empowered under Ohio Revised Code § 5321.14(A) to limit the application of aforementioned illegal rental agreement provisions on a class wide basis and require disgorgement (and/or credit against future charges) of all funds charged and/or collected pursuant thereto by Defendant from April 9, 2019, to avoid any unconscionable result.

## CLASS AND INDIVIDUAL COUNT FIVE - CONVERSION

101. All statements and allegations contained in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

102. Prior to Plaintiff's and each putative class member's payment of the "set up" fees and monthly "administrative fees" to Defendant pursuant to their respective Leases and Utility Services Addendums, Plaintiff, and each respective putative class member owned and possessed the monies to be paid for the "set up" fees and monthly "administrative fees".

103. By drafting and including the terms requiring payment of "set up" fees and monthly "administrative fees", Defendant established mechanisms by which it came into possession of funds belonging to Plaintiff and each putative class member unlawfully.

104. Defendant has collected and wrongfully converted such "set up" fees and monthly "administrative fees" by using them for its own purposes with a view to permanently deprive

Plaintiff and each putative class member of their respective rights to continue to own and possess them.

105.    Plaintiff and each putative class member have suffered actual damages by paying the "set up" fees and monthly "administrative fees" to Defendants.

106.    The payments of "set up" fees and monthly "administrative fees" by Plaintiff and each putative class member were/are identifiable and earmarked funds paid to and to be used by Defendant to cover its costs or other charges for, among other things, for abiding by Ohio landlord/tenant law to supply, among other things, running water and other utility services.

107.    Upon information and belief, Defendant (through BUBS) maintains individual account records for Plaintiff and each putative class member, which will establish that Defendant accounts for and can identify each monthly "set up" fee and each monthly "administrative fee" paid by Plaintiff and each putative class member.

108.    Defendant's actions to contract for, charge, collect and retain the "set up" fees and monthly "administrative fees" are aggravated and the result of misrepresentations that BUBS is some separate utility services entity that may arguably make reasonable administrative charges for the provision of utility services, like running water and sewer.

109.    Defendant intentionally includes and enforces the "set up" fee and monthly "administrative fee" provisions of the Lease and Utility Services Addendum under threat of default and eviction to deprive Plaintiff and each putative class member of their rightful property.

110.    Because of the aggravating nature of Defendant's actions, the imposition of punitive damages for Plaintiff and the putative class members is warranted.

## CLASS AND INDIVIDUAL COUNT SIX –
## INJUNCTIVE AND DECLARATORY RELIEF

111.    All statements and allegations contained in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

112.    Plaintiff, for himself and all putative class members, is seeking the Court's declaration that Defendant's contracting and charging for, collection and retention of the "set up" fees and monthly "administrative fees" under the Leases and Utility Services Addendums is unlawful under Ohio law.

113.    Plaintiff, for himself and all putative class members, is seeking to permanently enjoin Defendant from enforcing any residential real property lease it enters into with any tenant of one of Defendant's managed properties located in Ohio to charge, collect and/or retain any form "set up" fee and/or monthly "administrative fee" for a tenant's payment of utility services of type herein described.

114.    Plaintiff, for himself and all putative class members, is further seeking to require Defendant to properly identify to all its tenants its association with BUBS – in that BUBS and Defendant are the same Ohio entity.

115.    Plaintiffs, for themselves and all putative class members, are further seeking to require Defendant to discontinue any practice of informing Defendant's tenants that Defendant is not "associated" with "the billing" of utility services if Defendant intends to continue to operate through any trade name like and including BUBS to centrally collect utility service payments for Defendant's tenants.

116.    Such declaratory and injunctive relief is warranted under Ohio law because charging for, and/or collection and retention of "set up" fees and monthly "administrative fees" so that

Defendant's tenants can simply pay their periodic utility services violates one or more provisions the Ohio Landlords and Tenants Act.

## RESERVED CLASS COUNTS

117.     All statements and allegations contained in all preceding paragraphs are incorporated into this COUNT as if fully rewritten.

118.     Discovery in this action is expected to be extensive.

119.     The subject communications and payments between Defendant (through BUBS) and Plaintiff, and Defendant (through BUBS) and other similarly situated tenants, was done through the internet (through the Rent Café internet) and/or the United States Mail.

120.     Plaintiffs reserve the right to seek timely amendment to or supplementation of this CLASS ACTION COMPLAINT to potentially address additional class claims involving for example, the rights of Plaintiffs and the putative class members under the Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. § 1965; and/or Engaging in Pattern of Corrupt Activity statute found at R.C. § 2923.32; and Falsification R.C. §2921.13(A)(8) (Civil Action for Damages for Criminal Act found at R.C. § 2307.60(A)).

## CIVIL RULE 23 ALLEGATIONS APPLICABLE TO ALL
## COUNTS SEEKING CLASS RELIEF

121.     All statements and allegations contained in all preceding paragraphs are incorporated herein as if fully rewritten.

122.     This action involves tenants of over 12,000 Ohio residential rental units managed by Defendant

123.     Because the number of potentially affected class members exceeds several thousand, joinder of each of them into this action as additional named plaintiffs would be impractical if not overwhelming.

124. Numerosity pursuant to Fed. R. Civ. P. 23(a)(1) is satisfied.

125. Many questions of law and fact are common to Plaintiff and the putative members of the proposed classes and such questions predominate over questions relating to any individual members. Common factual questions and legal issues include, but are not necessarily limited to, the following:

    a. Is Defendant, acting through BUBS a "debt collector" under the FDCPA?

    b. Are the BUBS monthly WSIs provided to Defendant's tenants "communications" governed by the FDCPA?

    c. Do the WSIs and/or Defendant's (and BUBS') conduct in sending them without appropriate debt validation /dispute notifications violate the FDCPA?

    d. Do the WSIs falsely and materially misrepresent, in violation of the FDCPA, that Defendant's tenants legally owe "set up" fees and monthly "administrative fees".

    e. What is Defendant's net worth?

    f. Are the Leases and Utility Services Addendums at issue governed by Ohio's Landlords and Tenants Act?

    g. Are Plaintiff and the putative class members "tenants" under Ohio's Landlords and Tenants Act?

    h. Is Defendant a "landlord" under Ohio's Landlords and Tenants Act.

    i. Are the provisions in the Leases and Utility Services Addendums requiring Defendant's tenants to pay "set up" fees and monthly "administrative fees" to pay their water, sewer, and other basic utility services enforceable under Ohio's Landlords and Tenants Act?

    j. Did Defendant charge for, collect and/or retain "set up" fees and monthly "administrative fees" from its Ohio tenants?

k. Would Defendant be unjustly enriched under Ohio law if Defendant is permitted to retain the benefits of charging, collecting and/or retaining such "set up" fees and monthly "administrative fees"?

l. Do Defendants' actions in contracting and charging for, collecting and retaining such "set up" fees and "administrative fees, in view of their presumed knowledge that such actions would be improper under Ohio law, constitute actionable conversion?

m. Is declaratory and injunctive relief appropriate to find that "set up" fees and "administrative fees" provisions of the Leases / Utility Services Addendums are unenforceable as to Plaintiff and the classes, and should Defendant therefore be enjoined from attempting to enforce such provisions as to Defendant's Ohio tenants?

126. Commonality pursuant to Fed. R. Civ. P. 23(a)(2) and based upon these many common questions is satisfied.

127. Plaintiff's rights to relief, *vis a vis*, the putative members of the proposed classes are identical. Plaintiff and the putative members of the proposed classes are each Ohio tenants of Defendant's managed Ohio properties.

128. Plaintiff and the putative members of the proposed classes each signed Leases and Utility Services Addendums containing the same or nearly identical provisions concerning "set up" fees and monthly "administrative fee" provisions.

129. Plaintiff and the putative members of the proposed classes were each billed by BUBS, using form monthly WSIs and were each charged for and/or paid monthly "set up" fees and monthly "administrative fees' pursuant to Defendant's enforcement of Lease and applicable provisions of the Utility Services Addendums.

130. Typicality pursuant to Fed. R. Civ. P. 23(a)(3) is satisfied.

131.     Plaintiff is and will remain an appropriate and active representative for the proposed classes.  Plaintiff has no interest in any claims adverse to the absent class members.  Plaintiff intends to vigorously prosecute this case.

132.     Plaintiff has hired competent counsel who is experienced in managing and litigating complex class actions, and civil litigation involving the FDCPA and the rights of both landlords and tenants under Ohio law.

133.     Adequacy pursuant to Fed. R. Civ. P. 23(a)(4) is satisfied.

134.     The class action remedy is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the classes. It is probable that most class members will have been charged, and/or paid at least one (1) "set up" fee of $10.00 and at least one year's worth of monthly "administrative fees" totaling $60.00 or slightly more.

135.     As such, independent prosecution of individual suits by each class member is unlikely to be commensurate with its cost and time burdens when compared with the anticipated monetary outcomes.

136.     Moreover, individualized litigation presents potential for inconsistent or contradictory judgments across potentially multiple forums and courts.  Such multiplicity of litigation increases the delay and expense to all parties and is a burden to the court system due to the nature of the legal and factual issues of the case.

137.     By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication of all issues, an economy of scale, and comprehensive supervision by a single court.

138.     Predominance and superiority pursuant to Fed. R. Civ. P. 23(b)(3) are satisfied.

139.    As indicated herein, Defendant has establish a mechanism through its use of BUBS to regularly communicate with its tenants to collect "set up" and monthly "administrative fees" so that Defendant's tenants can pay their respective basic utility service charges – when typically such tenants could do so directly through *bona fide* utility companies or municipal corporations without paying either "set up" fees or monthly "administrative fees" just to make payments.

140.    While simultaneously sending WSIs to its tenants through BUBS, Defendant misrepresents that BUBS is a separate utility or utility billing entity over which it has no control or relationship.

141.    Defendant has acted uniformly with Plaintiff and all putative members of the proposed classes by using and enforcing the form Leases and Utility Services Addendums and by having BUBS send monthly form WSIs that contain misrepresentations and fail to comply with federal debt collection laws.

142.    Declaratory rulings are therefore appropriate as the unlawful nature of the contractual provisions at issue and the conduct in sending the WSIs  - as is injunctive relief – to prevent future tenants of rental properties managed by Defendant (and/or communicated with by BUBS) from experiencing the same financial unfairness and the same unfairness associated with such unlawful debt collection practices.

143.    The declaratory and injunctive bases for class relief pursuant to Fed. R. Civ. P. 23(b)(2) are satisfied.

144.    Defendant is a large company doing business in Ohio.  It is obligated under federal and state law to keep and retain significantly detailed business records.  Important to this case will be Defendant's (and BUBS') records including the accounting records for Plaintiff and each

putative class-member tenant of Defendant for the past 6 years. Such business records will be available and necessary for the proper administration and prosecution of this class action. Determinations as to membership in the class will be based in large part, upon such records and the data contained in them. Thus, class membership determinations will not be based upon separate, individualized hearings or reviews, but instead will be based upon the precise objective criteria which will be gleaned from a comprehensive review of Defendant's business records.

145. Identification of the members of the classes will be both administratively feasible and based upon objective information.

WHEREFORE, Plaintiff seeks the CLASS and individual relief sought in the various COUNTS stated herein against Defendant plus any other relief to which they are legally and/or equitably entitled.

Respectfully submitted,

/s/    James E. Nobile
James E. Nobile (0059705)
JENESQ
285 S. Liberty St., Suite 1D
Powell, Ohio 43065
(614) 300-2764 (Direct and VM)
jenobile@ntlegal.com

Counsel for Plaintiff and Proposed
Class Counsel